UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                  CASE NUMBER: 06-20185
                                            HONORABLE VICTORIA A. ROBERTS

v.

MARCUS LAMONT FREEMAN,

        Defendant.
        _____/

**OPINION AND ORDER**

**I.    INTRODUCTION**

Defendant Freeman filed a Motion in Limine Re: Defendant's County Jail Conversations (Doc. #464). Defendant Alvino Cornelius joined the motion (Doc. #472). This Motion is **DENIED.**

**II.    ARGUMENT AND ANALYSIS**

    **A.    Freeman's County Jail Conversations**

On February 3, 2006, while he was incarcerated at Wayne County Jail pending state murder charges, Freeman made three telephone calls that were intercepted by the Government. During the conversations Freeman speaks with a number of individuals about money, adding minutes to a phone, and making phone calls. (*See* Doc. # 486, Exh. A). He states that "B U C," who is also referred to as "Buck" and "Big dog," owes him money. (Exhibit A , Call 1, at p. at 1) Finally, Freeman mentions "Ceaze," another alleged coconspirator, and calls himself "Wood." (Exhibit A, Call 2, at p. at 2).

1

Freeman argues that the three conversations are inadmissible because they are irrelevant under Fed. R. Evid. 401, unduly prejudicial under Fed. R. Evid. 403, and that introduction of the recordings will violate his Fifth Amendment rights to due process and to receive a fair trial. He contends that the conversations are irrelevant because "the discussions involve money owed or to be derived from drug dealing and there is no evidence that the discussions involve any payments of money for the killing of Day." (Doc. # 464, at p. 3). The unfair prejudice of these recordings outweighs their probative value, Freeman asserts, because connecting a defendant with drug activity is prejudicial when the charges do not involve drug trafficking.

The Government responds that many of the tapes are needed to establish that the Defendants had nicknames which are used during other recordings, and the nicknames connect Defendants to the conspiracy. The Government intends to introduce redacted versions of these audio recordings at trial. It argues that the probative value of the calls far outweighs any prejudice because Freeman identifies himself as "Wood," and reinforces his connection to "Ceaze," and the West recordings indicate that "Wood" played an important role in the conspiracy along with "Buck" and "Ceaze." The Government also contends that the calls provide probative evidence that West owed Freeman money. The Government emphasizes that "[t]he substantial redactions of the calls to eliminate any obvious discussions of drug trafficking activity should ameliorate Freeman's concern of prejudice." (*Id.* at 9).

Freeman objects to admission of the redactions, arguing that the Government could play less prejudicial recordings in order to identify Freeman as "Wood." He also contends that the Government's theory that the conversations reveal that West owes

2

him money for Day's murder is incorrect, because they involve discussion of proceeds from narcotics trafficking and the sale of a house.

   1.    **Relevance**

Pursuant to Fed. R. Evid. 402, all relevant evidence is admissible. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. This standard is "extremely liberal." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (citation and internal quotation marks omitted). "Even if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth." *United States v. Whittington*, 455 F.3d 736, 738-39 (6th Cir. 2006) (citations and internal quotation marks omitted).

The conversations at issue are often cryptic and their subject matter is certainly not incontrovertible. However, it is not this Court's job to decipher meaning from the transcripts. The Government's theory that the conversations evidence Freeman's intent to receive payment from West for the murder of Day, is plausible. So is the theory of the defense: the conversations reflect transactions unrelated to Day's murder. However, the argument that the conversations are open to more than one interpretation and are insufficient, standing alone, to prove that West owed Freeman money for murdering Day, does not mean the conversations are irrelevant, and that the Government should be precluded from introducing them.

It is within the province of the jury, as finder of fact, and not this Court, to hear and weigh the evidence, along with arguments made by counsel, to determine how to

interpret the recordings and what probative value to assign them.  *See*, *e.g.*, *United States v. Frazier*, 387 F.3d 1244, 1272 (11th Cir. 2004) ("As the ultimate fact-finder, it is the jury that must determine, finally, where the truth in any case lies, and the district judge as gatekeeper may not usurp this function.").

Freeman contends that "B U C," who Freeman mentions in one of his calls, is not actually "Buck," or West, but someone named "Sam," as indicated in the Government's original transcript (rather than "Fam," as stated in the Government's revised transcript). In accordance with Freeman's right to present an alternative interpretation of the calls, Freeman may introduce that transcript as evidence that it was not West who owed him money. *See*, *e.g.*, *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983) (when there is a dispute concerning the contents of a tape, the jury may be presented with two transcripts, one containing the government's version and the other the defense's version).

Freeman's third call, in which he refers to himself as "Wood," and mentions "Ceaze," is relevant not only for identity purposes, as outlined in the Government's response, but, again, to show that "Buck" owed Freeman money and that he is acquainted with "Ceaze," also an alleged coconspirator.  Although there may be more innocuous conversations identifying Freeman as "Wood," the Government cannot be compelled to utilize an alternative recording when the third call is both relevant and probative of facts in issue other than identification. See FED. R. EVID. 402 ("All relevant evidence is admissible.").

Finally, Freeman's assertion that there is *no evidence,* assuming the government's interpretation, that any money owed was for the killing of Day, is incorrect.

4

Evidence that the Government intends to introduce reveals that West had motive to kill Day, and ties Freeman to the alleged conspiracy. Thus, there is some evidence that the money owed Freeman was for killing Day. The Court also rejects Freeman's due process argument; the admission of relevant and probative evidence does not violate his constitutional rights.

## 2. Prejudice

Freeman also contends that his February 3, 2006 conversations should be excluded under Fed. R. Evid. 403 because they connect him with illegal narcotics trafficking and are, therefore, unfairly prejudicial.

Under Rule 403 a court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice...." FED. R. EVID. 403. Unfair prejudice "does not mean the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986). Evidence that is prejudicial only because "it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403." *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996).

While the conversations discuss money owed Freeman, the Government has substantially redacted them, and there is no explicit reference to drugs or drug trafficking. The jury could infer, based on some of what was said, that Freeman was discussing drug dealing; however, the jury could also infer, and the Government will certainly argue, that Freeman was not discussing drug money, but the money West owed him for murdering Day. Of course, there are also innocuous interpretations of

5

everything said. The probative value of the audio recordings is, thus, not substantially outweighed by the dangers of unfair prejudice.

## III. CONCLUSION

Freeman's Motion in Limine Re: Defendant's County Jail Conversations is **DENIED**.

                                                  /s/ Victoria A. Roberts
                                                  Victoria A. Roberts
                                                  United States District Judge

Dated: September 28, 2010

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 28, 2010.

s/Linda Vertriest
Deputy Clerk

---