FAIT ACCOMPLI LEGAL SERVICES
4352 BAY ROAD, SUITE 188
SAGINAW TOWNSHIP, MI 48603
TOLL FREE NO.: 1-800-21-LAW-74

FILED
MAR 1 8 2019
CLERK'S OFFICE
DETROIT

63

# EMERGENCY MOTION

## c/o HON. VICTORIA A. ROBERTS

## PETITIONER: MARCUS L. FREEMAN

## CRIMINAL CASE NO.: 06-20185

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
UNITED STATES OF AMERICA**

| | |
|---|---|
| **United States of America,** | **Criminal Case No.: 06-cr-20185-VAR-VMM-2** |
| **Plaintiff(s),** | **MOTION FOR HABEAS CORPUS RELIEF** |
| **v.** | **AND FOR INTERM CONDITIONAL RELEASE** |
| | **PURSUANT TO THE FIRST STEP ACT** |
| | **AMEMDMENT TO THE GOOD TIME STATUTE** |
| **Marcus Lamont Freeman,** | **Honorable Victoria A. Roberts** |
| **Petitioner.** | |

NOW COMES, Marcus Freeman, (Hereinafter, "Petitioner"), respectfully moves this Honorable Court to

grant this motion in its entirety.

**INTRODUCTION**

On July 20, 2011, this Court sentenced Petitioner to a sentence of Life imprisonment for a

violation of 18 U.S.C. § 1958 Conspiracy to Use Interstate Commerce of Murder for Hire.  Under the

federal statutes, a term of imprisonment is satisfied through actual time in custody plus good

time credits. 18 U.S.C. § 3624(a) and (b). For years, the Bureau of Prisons (BOP) has interpreted

the good time credit statute to permit a maximum credit of only 47 days per year of the sentence

imposed, despite the statutory reference to 54 days of credit. In the First Step Act of 2018 (Title

I), Congress amended § 3624(b) to finally permit full credit of 54 days per year of the sentence

imposed. This amendment applies retroactively. Petitioner has been an exemplary prisoner and

earned all available good time credits.  Therefore, he should receive an additional 105 days of

good time credits on his 180 months sentence under the amended statute, advancing his current

Projected Release date of May 13, 2019 to January 28, 2019. However, BOP has not yet

acted to change Petitioner's projected release date, asserting that the First Step Act provides a

delayed effective date for implementation of the good time credit amendment. <u>In addition,</u>

<u>Petitioner's Home Confinement Date is also amended.</u>

1

**MOTION FOR HABEAS CORPUS RELIEF AND FOR INTERIM CONDITIONAL RELEASE PENDING DETERMINATION REGARDING THE APPLICABILITY OF THE FIRST STEP ACT AMENDMENT TO THE GOOD TIME CREDIT STATUTE**

This motion asserts that the amendment to § 3624(b) is effective immediately, with the result that Petitioner will be incarcerated in violation of the laws and Constitution of the United States as of January 2, 2019. Petitioner asks this Court to grant interim relief in the form of conditional release pending this litigation and to ultimately hold that the amendment to the good time credit statute was immediately effective upon signing by the President.

### A. The First Step Act Implemented the Bureau of Prisons' Intent to Use the Term of Imprisonment as The Proper Measure for Good Time Credit And, Separately, Created A New and Independent "Earned Time Credit" System.

The Sentencing Reform Act of 1984 eliminated the parole system and sharply cut back on the rate at which federal prisoners could earn good time credit, providing in § 3624(b) that prisoners could receive "credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment." The legislative history of the original bill is rife with references to providing a maximum 15 percent reduction for good time credits, which would require 54 days of credit per year of the sentence imposed. *See, e.g.*, 131 Cong. Rec. S4083-03 (1985) (statement of Sen. Kennedy) (under the Act, the "sentence announced by the sentencing judge will be for almost all cases the sentence actually served by the defendant, with a 15 percent credit for 'good time.'"); 131 Cong. Rec. E37-02 (1985) (statement of Rep. Hamilton) ("Now sentences will be reduced only 15% for good behavior."); *see also* 141 Cong. Rec. S2348-01, S2349 (1995) (statement of Sen. Biden) (as co-author of § 3624(b), on a sentence of ten years, "you are going to go to prison for at least 85 percent of that time. . . . You can get up to 1.5 years in good time credits[.]"). However, the

2

BOP's mathematical formula for counting the 54 days against time actually served, as opposed to the sentence imposed, resulted in prisoners receiving only 47 days of credit for each year of the term of imprisonment. The Sixth Circuit upheld this computation in *Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1268 (9th Cir. 2001), and the Supreme Court approved the 47-day formula using time of actual custody in *Barber v. Thomas*, 560 U.S. 474 (2010). But with the BOP's calculation based on actual time of custody, prisoners have received reductions of only 12.8 percent of the sentence imposed, not the 15 percent Congress contemplated. Shortly after *Barber*, the Department of Justice and the BOP supported legislation that would shift the 54-day calculation from actual time served to the sentence imposed, thereby increasing the maximum available good time credits from 47 to 54 days per year. *See Hearing on the Oversight of the Federal Bureau of Prisons Before the Subcomm. on Crime, Terrorism, Homeland Security and Investigations of the H. Comm. on the Judiciary*, 113th Cong., at 23-24 (2013) (Statement of Charles E. Samuels, Jr. Director, Federal Bureau of Prisons).[1] By doing so, the statute would conform to the intent of the original legislation to grant a maximum 15 percent reduction. However, the provision was not enacted until recently attached to the First Step Act. Title I of the First Step Act, entitled "Recidivism Reduction," consists of seven sections spanning 57 pages. The bulk of the title is set out in Section 101 and provides instructions for the Attorney General to create and to implement a "risk and needs assessment system," referred to in the legislation as "the System," along with recidivism reduction programming. App. A at 3-39 (promulgating 18 U.S.C. §§ 3631-3635). The legislation instructs that the System must provide incentives for participation in programming, with the central incentive being the possibility of

---

[1] Available at https://www.govinfo.gov/content/pkg/CHRG-113hhrg82847/pdf/CHRG-113hhrg82847.pdf, at 23-24.

earning "earned time credit" to be "applied toward time in prerelease custody or supervised

release." App. A at 12. As part of the earned time credit system, Section 102 of the law adds

subsection (g) to 18 U.S.C. § 3624. App. A at 44-52. Under that provision, the BOP can place an

"eligible prisoner" who has earned time credits equal to the time remaining on his or her

sentence in pre-release custody (home confinement or residential reentry center) or transfer the

prisoner to supervised release up to 12 months early. *Id.* Section 3624(g)(1) starts with a

reference to the eligible prisoners to whom "this subsection" applies. App. A at 44. Nestled

within Section 102(b) of the First Step Act is the two-paragraph "good-time fix" amendment to

18 U.S.C. § 3624(b) that applies to this case and that provides in full:

> Section 3624 of title 18, United States Code, is amended—
>
> (A) in subsection (b)(1)—
>
> (i) by striking '', beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term,'' and inserting ''of up to 54 days for each year of the prisoner's sentence imposed by the court,''; and
>
> (ii) by striking ''credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited with in the last six weeks of the sentence'' and inserting ''credit for the last year of a term of imprisonment shall be credited on the first day of the last year of the term of imprisonment[.]''

App. A at 43-44. The good-time fix appears independent of the other provisions in Title I.

The First Step Act provides timelines for the implementation of the risk and needs

assessment system. Specifically, it gives the Attorney General 210 days after enactment of

the law within which to develop and publicly release the risk and needs assessment

system. App. A at 6 (promulgating 18 U.S.C. § 3632). Within 180 days after that, the

Director of the BOP must assess each prisoner and begin to provide appropriate

programming. App. A at 39-40 (promulgating 18U.S.C. § 3621(h)). There is a two-year

"phase-in" for the BOP to make programming available to all prisoners. App. A at 40-41.

At the end of Section 102(b), the law provides a delayed effective date for "this subsection"

contingent on the release of the risk and needs assessment system:

> (2) EFFECTIVE DATE.—The amendments made by this subsection shall take effect
> beginning on the date that the Attorney General completes and releases the risk and needs
> assessment system under subchapter D of chapter 229 of title 18, United States Code, as
> added by section 101(a) of this Act.

At issue here is whether the delayed effective date in Section 102(b)(2) applies only to the earned

time transfer provisions in Section 102(b)(1)(B), or whether it also delays the BOP's

implementation of the independent good-time fix in Section 102(b)(1)(A).

### B. The Good-Time Fix Should Be Construed to Be Effective Immediately Because The Delayed Effective Date Provision Is Rationally Connected Solely to The New Risk and Needs Assessment System.

"[A]bsent *a clear direction by Congress to the contrary*, a law takes effect on the date of

enactment." *Gozlon-Peretz v. United States*, 498 U.S. 395, 403 (1991) (emphasis added); *accord*

*United States v. Clizer*, 464 F.2d 121, 123 n. 2 (9th Cir. 1972); *United States v. Bafia*, 949 F.2d

1465, 1480 (7th Cir. 1991). Here, the only potentially relevant effective date provision in Title I

of the First Step Act explicitly links the need for a delay to the risk and needs assessment system.

It states: "The amendments made by *this subsection* shall take effect beginning on the date that

the Attorney General completes and releases the risk and needs assessment system under

subchapter D of chapter 229 of title 18, United States Code, as added by section 101(a) of this

Act." App. At 52-53 (emphasis added). Although that provision considered on its own could

rationally be read to encompass the good-time fix, the full statutory context as well as potential

5

constitutional infirmities militate in favor of construing "this subsection" narrowly to mean only

the newly promulgated subsection (g) of § 3624, which governs the new earned time credit

transfer authority, leaving the good-time fix to be effective immediately in the absence of "clear

direction by Congress to the contrary."

> *1. The Statutory Context Of "This Subsection" Favors Application Of The Delayed Effective Date Only To Transfer Based On Earned Time Credits As Opposed To Release Based On Good Time Credits.*

"[S]tatutory interpretation turns on 'the language itself, the specific context in which that

language is used, and the broader context of the statute as a whole.'" *Nken v. Holder*, 556

U.S.418, 426 (2009) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). On its

face, the text of the delayed effective date clause provides good reason to construe "this

subsection" as referencing solely the new earned time credit transfer provision because of its

contingency on the "date that the Attorney General completes and releases the risk and needs

assessment system. "Only the earned time credit provision has any relation to the risk and needs

assessment system. The good-time fix merely adjusts a calculation that the BOP has been

making for decades; it requires no new system to implement and, thus, requires no delay.

Moreover, the amendments in Section 102(b)(1)(B) repeatedly use the same phrase "this

subsection" to mean subsection (g) of § 3624 that will govern earned-time transfer to prerelease

custody. That phrase—"this subsection"—does not appear in the Section 102(b)(1)(A) good-time

fix. Thus, context strongly favors the narrow reading of delay applying only to subsection (g).

Traditional tools of statutory construction support this proposed limiting construction of Section

102(b)(2) to solely include § 3624(g) within the delayed effective date. First and foremost, courts

"do not construe statutes in a manner that would lead to absurd results," nor do courts "impute to

Congress an intent to create a law that produces an unreasonable result." *United States v.*

*Casasola*, 670 F.3d 1023, 1029 (9th Cir. 2012); *see Mellouli v. Lynch*, 135 S. Ct. 1980, 1989 (2015) (rejecting agency construction of statute that "makes scant sense" given the need to avoid "consequences Congress could not have intended") (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 200 (2013)). There is an obvious need to delay implementation of the earned time transfer provision. The entirely new risk and needs assessment system must be in place before the BOP can begin using time credits earned under that system to determine which prisoners should be transferred to prerelease custody or supervised release. By contrast, the good time credit system is not new, and it operates on a separate plane from the earned time credit transfer and programming provisions of Title I. The BOP has been touting the need for this amendment for many years. The good time credit amendment is a simple calculation, subtracting seven days of good time credit for each year served from compliant prisoners' sentences. The SENTRY computer system of the BOP could implement the adjustment virtually overnight. The time involved for individuals is relatively small and needs no programming to implement. Unlike larger sentence reductions such as those implemented by retroactive guideline amendments, prisoners impacted by the good-time fix would already be close to release and prepared for reentry. Delaying the good-time fix makes scant sense and undermines rather than furthers coherent implementation of the First Step Act. Second, courts construe legislation aimed at remedying prior drafting oversights to be immediately effective. In *Gozlon-Peretz*, the Supreme Court considered the effective date of a statutory amendment to correct an apparent mistake in the Controlled Substances Penalties Amendments Act of 1984, which inexplicably mandated post-confinement supervision for many small-time drug offenders but exempted big-time narcotics offenders. 498 U.S. 404-05. The new Act removed that disparity and mandated post-confinement supervision for all Schedule I and II drug offenders. *Id.* The Supreme Court held,

"Given the apparent purpose of the legislation to rectify an earlier mistake, it seems unlikely that Congress intended the effective date to be any time other than the date of enactment." *Id.* at 404-05. Similarly, in this case, the purpose of the good-time fix was to rectify the computation based on actual time served that provided seven days per year fewer than intended. As in *Gozlon-Peretz*, it is unlikely Congress intended the rectification of the good time credit calculation to be delayed. Accordingly, the provision should be construed to take effect immediately. Arguably, a narrow interpretation of "this subsection" in the effective date provision of Section 102(b)(2) to mean subsection (g) of § 3624 would be in contrast with the use of the same term in the applicability provision of Section 102(b)(3), which provides, "The amendments made by this subsection shall apply with respect to offenses committed before, on, or after the date of enactment of this Act, except that such amendments shall not apply with respect to offenses committed before November 1, 1987." But Section 102(b)(3) includes no reference to the "risk and needs assessment system." Accordingly, that provision can readily encompass both subsections (b) and (g) of § 3624. As the Supreme Court reminded in *Barber*, "the same phrase used in different parts of the same statute [can] mean different things, particularly where the phrase is one that speakers can easily use in different ways without risk of confusion." *Barber*, 560 U.S. at 484; *see* Rogowski v. Foremost Ins. Co. Grand Rapids MI., 2016 U.S. Dist. LEXIS 111618 ("[C]larifying legislation is not subject to any presumption against retroactivity and is applied to all cases pending as of the date of its enactment."). In the context of the overall legislation and purpose of the statute, the Court should construe "this subsection" to relate only to § 3624(g) in the effective date section, thereby construing the good-time fix to be retroactive and immediately effective to all current inmates.

*2. If Not Construed to Be Immediately Effective, The Delayed Effective Date of The Good-Time Fix Would Be Arbitrary and Capricious in Violation of The Due Process and Equal Protection Clauses of The Constitution.*

Irrational and arbitrary classifications violate the equal protection clause. *Chapman v. United States*, 500 U.S. 453, 465 (1991). The equal protection clause applies to the federal government through the Fifth Amendment's due process clause. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). Delaying the effective date of the good-time fix to an uncertain time in the future would be arbitrary, capricious, and cruel because it would require greater-than-intended incarceration for the class of well-behaved prisoners who, but for the delayed effective date, would be immediately released from incarceration. "Disparate treatment of similarly situated defendants triggers equal protection concerns when there is no rational basis for the distinction." *United States v. Juvenile Male*, 900 F.3d 1036, 1043 (9th Cir. 2018). Here, the disparate treatment of those whose sentences were calculated before versus after the uncertain future effective date "might well trigger equal protection concerns." *Jonah R. v. Carmona*, 446 F.3d 1000, 1008 (9th Cir. 2006) (construing pretrial credit statute to avoid disparate treatment of juveniles and adults); *Myers v. United States*, 446 F.2d 232, 234 (6th Cir. 1971) (holding that the Fifth Amendment requires that all similarly-situated prisoners receive credit under 18 U.S.C. § 3568); *Stapf v. United States*, 367 F.2d 326, 329 (D.C. Cir. 1966) ("Denial of credit . . . where others guilty of crimes of the same or greater magnitude automatically receive credit, would entail an arbitrary discrimination within the power and hence the duty of the court to avoid."). As in *Jonah R.*, the Court should construe the good-time fix statute to be effective immediately to avoid serious constitutional problems. 446 F.3d at 1008 ("We must interpret statutes to avoid such constitutional difficulties whenever possible."); *see Clark v. Martinez*, 543 U.S. 371

9

(2005) (describing the principle of constitutional avoidance); *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001) (same). Otherwise, the delayed effective date would irrationally and unconstitutionally discriminate against persons who earned the requisite good time credits sufficient for immediate release. Those prisoners presently close to their release dates who have abided by all institutional rules during their incarceration would be held in custody to await the satisfaction of an unrelated condition precedent—the implementation of the risk and needs assessment system. Extending an individual's deprivation of liberty with no countervailing purpose would violate the Due Process Clause and its equal protection component in violation of the Fifth Amendment. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Although the amount of additional custody is relatively small, "'To a prisoner,' this prospect of additional 'time behind bars is not some theoretical or mathematical concept.'" *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018) (quoting *Barber*, 560 U.S. at 504) (Kennedy, J., dissenting). "'[A]ny amount of actual jail time' is significant, and 'ha[s] exceptionally severe consequences for the incarcerated individual [and] for society which bears the direct and indirect costs of incarceration[.]'" *Id.* (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001), and *United States v. Jenkins*, 854 F.3d 181, 192 (2d Cir. 2017)).

**C. This Court Should Grant Interim Conditional Release to Prevent Irreparable Harm.**

This Court has both constitutional and statutory jurisdiction to review the lawfulness of Petitioner's sentence and its execution. *See* 28 U.S.C. §§ 2241 and 2255 (providing statutory

habeas corpus jurisdiction to determine the lawfulness of a prisoner's detention); *Boumediene v. Bush*, 553 U.S. 723, 739 (2008) ("The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom."); *see also Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 379-80 (1994) (recognizing ancillary jurisdiction as available to enable the court to manage its proceedings, vindicate its authority, and effectuate its decrees).[2] Concomitant with the Court's [2] habeas jurisdiction is the power to avoid Petitioner's unnecessary incarceration by providing conditional release. *See Hensley v. Municipal Court*, 411 U.S. 345, 352 (1973) (habeas authority includes the power to "order [a] petitioner's release pending consideration of his habeas corpus claim") (citing *In re Shuttlesworth*, 369 U.S. 35 (1962)); (9th Cir. 1987) (the authority of the court to conditionally release a prisoner <u>Powell v. Howes</u>, 2008 U.S. Dist. LEXIS 72592 pending habeas proceedings derives from the power to issue the writ itself.). <u>There is no requirement that Petitioner exhaust administrative remedies within the BOP before seeking relief from this Court. Exhaustion of administrative remedies is not at issue under § 2255 or the Court's ancillary jurisdiction.</u> And exhaustion is only a prudential consideration, not a jurisdictional requirement, under § 2241. *United States v. Woods*, 888 F.2d 653, 654 (9th Cir. 1989); *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990). Under the Supreme Court standard in *Madigan v. McCarthy*, exhaustion is excused where 1) the prisoner faces irreparable harm from delay incident to pursuing administrative remedies; 2) there is some doubt whether the agency was empowered to render relief; or 3) the agency has indicated predetermination of the issue, rendering exhaustion futile. 503 U.S. 140, 146-49 (1992). All three of the considerations in *Madigan* apply here. Without the Court's intervention, Petitioner faces imminent irreparable

11

---

2 Section 2255 motions must be brought before "the court which imposed the sentence[.]" Although issues related to the execution of the sentence are often brought in the district of confinement under § 2241, the filing in the district of origin is a matter of venue, not subject matter jurisdiction. *Rumsfeld v. Padilla*, 542 U.S. 426, 451 (2004) ("[T]he question of the proper location for a habeas petition is best understood as a question of personal jurisdiction or venue[.]")

harm in the form of over-service of his sentence given that his correct release date under the new law will pass in a matter of days. As a practical matter, litigation of this question will take more time than is available without causing irreparable harm. Futility is also at issue. The BOP is notifying prisoners in general that the retroactive amendment to the good time credit statute "is not effective immediately." Farah Stockman, *Shutdown Threatens to Delay Criminal Justice Reforms Signed into Law by Trump*, N.Y. Times (Jan. 16, 2019); *see also* Pat Nolan & David Safavian, *when bureaucrats undermine our laws*, The Hill (Jan. 19, 2019) ("rather than put the 54 days into effect immediately despite clear guidance by the First Step Act, the BOP continues to drag its feet."). Accordingly, the Court should not require Petitioner to make further efforts to seek an administrative remedy.  Here, Petitioner is serving a 180 months term of imprisonment imposed by this Court, and the Court should now act to assure that he serves not a day longer than the law allows. After all, "no citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress." 18 U.S.C. § 4001(a). Petitioner has no criminal history and a spotless prison record. The Probation Office has approved his release plan and is aware of this legal action that would potentially accelerate release. The terms of supervised release in the judgment provide appropriate conditions for interim relief pending the litigation.

(Kennedy, J., concurring). The implementation of the sentence imposed by this Court, involving purely legal issues, is properly brought in this district.

> **D. If the Government Controverts Legislative Intent, The Court Should Order Discovery Regarding the Promulgation and Implementation of The Good Time Credit Amendment and The Meaning of The Effective Date Provision in Section 102.**

If the government disputes the intent of the drafters with respect to the effective date of the good-time fix, Petitioner requests that the Court authorize discovery in support of his motion. Specifically, the defendant requests that the government provide petitioner with all writings in the possession of the BOP and the Department of Justice related to the promulgation and implementation of the good time credit amendment from the initial decision to seek such a legislative measure to and including the adoption of the First Step Act's good time credit provision, including but not limited to memoranda, reports, implementation plans, evaluations, letters, and electronic communications. In addition to the Court's authority by rule and inherent power to require such production, the discovery sought should also be considered required in potential mitigation of sentence under *Brady v. Maryland*, 373 U.S. 83 (1963).

## CONCLUSION

For the foregoing reasons, this Court should enter an order directing the Bureau of Prisons to conditionally release Petitioner from custody on the conditions of supervision ordered in the judgment as soon as practicable. Ultimately, the Court should hold that Petitioner's good time credits must be calculated pursuant to the amendment to § 3624(b) in the First Step Act without delay. *Moreover, Petitioner contends that programs implemented in the BOP with afford more Good Conduct Time (GCT).*

Respectfully submitted this
13th day of March,2019.

Marcus Lamont Freeman, Petitioner
FAIT ACCOMPLI LEGAL SERVICES
Sworn to as true and correct
the penalties of perjury pursuant to
Title 18 U.S.C. §1746

# *In the Senate of the United States,*

*December 18, 2018.*

*Resolved,*  That the Senate agree to the amendment of
the House of Representatives to the bill (S. 756) entitled ''An
Act to reauthorize and amend the Marine Debris Act to promote
international action to reduce marine debris, and for
other purposes.'', with the following

# SENATE AMENDMENT TO HOUSE AMENDMENT:

In lieu of the matter proposed to be inserted by the
House amendment to the text of the bill, insert the following:

1 *SECTION 1. SHORT TITLE; TABLE OF CONTENTS.*

2 *(a) SHORT TITLE.—This Act may be cited as the*

3 *' 'First Step Act of 2018' ' .*

4 *(b) TABLE OF CONTENTS.—The table of contents for*

5 *this Act is as follows:*

*Sec. 1. Short title; table of contents.*
*TITLE I—RECIDIVISM REDUCTION*
*Sec. 101. Risk and needs assessment system.*
*Sec. 102. Implementation of system and recommendations by Bureau of Prisons.*
*Sec. 103. GAO report.*
*Sec. 104. Authorization of appropriations.*

Appendix A

2

† S 756 EAS

*Sec. 105. Rule of construction.*
*Sec. 106. Faith-based considerations.*
*Sec. 107. Independent Review Committee.*
*TITLE II—BUREAU OF PRISONS SECURE FIREARMS STORAGE*
*Sec. 201. Short title.*
*Sec. 202. Secure firearms storage.*
*TITLE III—RESTRAINTS ON PREGNANT PRISONERS PROHIBITED*
*Sec. 301. Use of restraints on prisoners during the period of pregnancy and postpartum recovery prohibited.*
*TITLE IV—SENTENCING REFORM*
*Sec. 401. Reduce and restrict enhanced sentencing for prior drug felonies.*
*Sec. 402. Broadening of existing safety valve.*
*Sec. 403. Clarification of section 924(c) of title 18, United States Code.*
*Sec. 404. Application of Fair Sentencing Act.*
*TITLE V—SECOND CHANCE ACT OF 2007 REAUTHORIZATION*
*Sec. 501. Short title.*
*Sec. 502. Improvements to existing programs.*
*Sec. 503. Audit and accountability of grantees.*

1

Sec. 504. Federal reentry improvements.
Sec. 505. Federal interagency reentry coordination.
Sec. 506. Conference expenditures.
Sec. 507. Evaluation of the Second Chance Act program.
Sec. 508. GAO review.
TITLE VI—MISCELLANEOUS CRIMINAL JUSTICE
Sec. 601. Placement of prisoners close to families.
Sec. 602. Home confinement for low-risk prisoners.
Sec. 603. Federal prisoner reentry initiative reauthorization; modification of imposed term of imprisonment.
Sec. 604. Identification for returning citizens.
Sec. 605. Expanding inmate employment through Federal Prison Industries.
Sec. 606. De-escalation training.
Sec. 607. Evidence-Based treatment for opioid and heroin abuse.
Sec. 608. Pilot programs.
Sec. 609. Ensuring supervision of released sexually dangerous persons.
Sec. 610. Data collection.
Sec. 611. Healthcare products.
Sec. 612. Adult and juvenile collaboration programs.
Sec. 613. Juvenile solitary confinement.

Appendix A

3

† S 756 EAS

# 1 TITLE I—RECIDIVISM

# 2 REDUCTION

3 **SEC. 101. RISK AND NEEDS ASSESSMENT SYSTEM.**

4 *(a) IN GENERAL.—Chapter 229 of title 18, United*
5 *States Code, is amended by inserting after subchapter C*
6 *the following:*

7 ' 'SUBCHAPTER D—RISK AND NEEDS

8 ASSESSMENT SYSTEM

' 'Sec.
' '3631. Duties of the Attorney General.
' '3632. Development of risk and needs assessment system.
' '3633. Evidence-based recidivism reduction program and recommendations.
' '3634. Report.
' '3635. Definitions.

9 **"§ 3631. Duties of the Attorney General**

10 ' '(a) IN GENERAL.—The Attorney General shall carry
11 out this subchapter in consultation with—
12 ' '(1) the Director of the Bureau of Prisons;
13 ' '(2) the Director of the Administrative Office of

2

14 *the United States Courts;*
15 *‘ ‘(3) the Director of the Office of Probation and*
16 *Pretrial Services;*
17 *‘ ‘(4) the Director of the National Institute of*
18 *Justice;*
19 *‘ ‘(5) the Director of the National Institute of*
20 *Corrections; and*
21 *‘ ‘(6) the Independent Review Committee authorized by the First Step Act of 2018*
Appendix A

4
† S 756 EAS
1 *‘ ‘(b) DUTIES. —The Attorney General shall—*
2 *‘ ‘(1) conduct a review of the existing prisoner*
3 *risk and needs assessment systems in operation on the*
4 *date of enactment of this subchapter;*
5 *‘ ‘(2) develop recommendations regarding evidence-based recidivism reduction programs and productive activities in accordance with section 3633;*
8 *‘ ‘(3) conduct ongoing research and data analysis*
9 *on—*
10 *‘ ‘(A) evidence-based recidivism reduction*
11 *programs relating to the use of prisoner risk and*
12 *needs assessment tools;*
13 *‘ ‘(B) the most effective and efficient uses of*
14 *such programs;*
15 *‘ ‘(C) which evidence-based recidivism reduction programs are the most effective at reducing*
17 *recidivism, and the type, amount, and intensity*
18 *of programming that most effectively reduces the*
19 *risk of recidivism; and*
20 *‘ ‘(D) products purchased by Federal agencies that are manufactured overseas and could be*
22 *manufactured by prisoners participating in a*

23 *prison work program without reducing job opportunities for other workers in the United*
25 *States;*
Appendix A

5
† S 756 EAS
1 *' '(4) on an annual basis, review, validate, and*
2 *release publicly on the Department of Justice website*
3 *the risk and needs assessment system, which review*
4 *shall include—*
5 *' '(A) any subsequent changes to the risk and*
6 *needs assessment system made after the date of*
7 *enactment of this subchapter;*
8 *' '(B) the recommendations developed under*
9 *paragraph (2), using the research conducted*
10 *under paragraph (3);*
11 *' '(C) an evaluation to ensure that the risk*
12 *and needs assessment system bases the assessment*
13 *of each prisoner' s risk of recidivism on indicators of progress and of regression that are dynamic and that can reasonably be expected to*
16 *change while in prison;*
17 *' '(D) statistical validation of any tools that*
18 *the risk and needs assessment system uses; and*
19 *' '(E) an evaluation of the rates of recidivism among similarly classified prisoners to*
21 *identify any unwarranted disparities, including*
22 *disparities among similarly classified prisoners*
23 *of different demographic groups, in such rates;*
24 *' '(5) make any revisions or updates to the risk*
25 *and needs assessment system that the Attorney Gen—*
Appendix A

6
† S 756 EAS
1 *eral determines appropriate pursuant to the review*

4

2 under paragraph (4), including updates to ensure
3 that any disparities identified in paragraph (4)(E)
4 are reduced to the greatest extent possible; and
5 ' '(6) report to Congress in accordance with section 3634.
7 "§ 3632. Development of risk and needs assessment
8 system
9 ' '(a) In General.—Not later than 210 days after the
10 date of enactment of this subchapter, the Attorney General,
11 in consultation with the Independent Review Committee
12 authorized by the First Step Act of 2018, shall develop and
13 release publicly on the Department of Justice website a risk
14 and needs assessment system (referred to in this subchapter
15 as the 'System' ), which shall be used to—
16 ' '(1) determine the recidivism risk of each prisoner as part
of the intake process, and classify each
18 prisoner as having minimum, low, medium, or high
19 risk for recidivism;
20 ' '(2) assess and determine, to the extent practicable, the
risk of violent or serious misconduct of
22 each prisoner;
23 ' '(3) determine the type and amount of evidence
based recidivism reduction programming that is appropriate for
each prisoner and assign each prisoner
Appendix A

7
† S 756 EAS
1 to such programming accordingly, and based on the
2 prisoner' s specific criminogenic needs, and in accordance with
subsection (b);
4 ' '(4) reassess the recidivism risk of each prisoner
5 periodically, based on factors including indicators of
6 progress, and of regression, that are dynamic and
7 that can reasonably be expected to change while in
8 prison;

9   ' '(5) reassign the prisoner to appropriate evidence-based
recidivism reduction programs or productivity productive activities
based on the revised determination to
12 ensure that—
13   ' '(A) all prisoners at each risk level have a
14 meaningful opportunity to reduce their classification during the
period of incarceration;
16   ' '(B) to address the specific criminogenic
17 needs of the prisoner; and
18   ' '(C) all prisoners are able to successfully
19 participate in such programs;
20   ' '(6) determine when to provide incentives and
21 rewards for successful participation in evidence-based
22 recidivism reduction programs or productive activities in
accordance with subsection (e);
Appendix A

8
† S 756 EAS
1   ' '(7) determine when a prisoner is ready to
2 transfer into prerelease custody or supervised release
3 in accordance with section 3624; and
4   ' '(8) determine the appropriate use of audio technology for
program course materials with an understanding of dyslexia.
7 In carrying out this subsection, the Attorney General may
8 use existing risk and needs assessment tools, as appropriate.
9   ' '(b) ASSIGNMENT OF EVIDENCE-BASED RECIDIVISM
10 REDUCTION PROGRAMS.—The System shall provide guidance on the type,
amount, and intensity of evidence-based
12 recidivism reduction programming and productive activities that
shall be assigned for each prisoner, including—
14   ' '(1) programs in which the Bureau of Prisons
15 shall assign the prisoner to participate, according to
16 the prisoner' s specific criminogenic needs; and
17   ' '(2) information on the best ways that the Bureau of Prisons
can tailor the programs to the specific

6

19 *criminogenic needs of each prisoner so as to most effectively*
*lower each prisoner's risk of recidivism.*
21 ''(c) HOUSING AND ASSIGNMENT DECISIONS.—The
22 *System shall provide guidance on program grouping and*
23 *housing assignment determinations and, after accounting*
24 *for the safety of each prisoner and other individuals at the*
25 *prison, provide that prisoners with a similar risk level be*
Appendix A

9
† S 756 EAS
1 *grouped together in housing and assignment decisions to the*
2 *extent practicable.*
3 ''(d) EVIDENCE-BASED RECIDIVISM REDUCTION PRO4
GRAM INCENTIVES AND PRODUCTIVE ACTIVITIES RE5
WARDS.—The System shall provide incentives and rewards
6 *for prisoners to participate in and complete evidence-based*
7 *recidivism reduction programs as follows:*
8 ''(1) PHONE AND VISITATION PRIVILEGES.—A
9 *prisoner who is successfully participating in an evidence-based*
*recidivism reduction program shall receive—*
12 ''(A) phone privileges, or, if available, video
13 *conferencing privileges, for up to 30 minutes per*
14 *day, and up to 510 minutes per month; and*
15 ''(B) additional time for visitation at the
16 *prison, as determined by the warden of the prison.*
18 ''(2) TRANSFER TO INSTITUTION CLOSER TO RELEASE RESIDENCE.—A *prisoner who*
*is successfully*
20 *participating in an evidence-based recidivism reduction program*
*shall be considered by the Bureau of*
22 *Prisons for placement in a facility closer to the prisoner's*
*release residence upon request from the prisoner*
24 *and subject to—*
Appendix A

10
† S 756 EAS

7

1  ' '(A) bed availability at the transfer facility;
3  ' '(B) the prisoner' s security designation;
4 and
5  ' '(C) the recommendation from the warden
6 of the prison at which the prisoner is incarcerated at the time
of making the request.
8  ' '(3) ADDITIONAL POLICIES.—The Director of the
9 Bureau of Prisons shall develop additional policies to
10 provide appropriate incentives for successful participation and
completion of evidence-based recidivism
12 reduction programming. The incentives shall include
13 not less than 2 of the following:
14  ' '(A) Increased commissary spending limits
15 and product offerings.
16  ' '(B) Extended opportunities to access the
17 email system.
18  ' '(C) Consideration of transfer to preferred
19 housing units (including transfer to different
20 prison facilities).
21  ' '(D) Other incentives solicited from prisoners and determined
appropriate by the Director.
24  ' '(4) TIME CREDITS. —
Appendix A

11
† S 756 EAS
1  ' '(A) IN GENERAL.—A prisoner, except for
2 an ineligible prisoner under subparagraph (D),
3 who successfully completes evidence-based recidivism reduction
programming or productive activities, shall earn time credits as
follows:
6  ' '(i) A prisoner shall earn 10 days of
7 time credits for every 30 days of successful
8 participation in evidence-based recidivism
9 reduction programming or productive activities.

8

11   ' '(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low

13 risk for recidivating, who, over 2 consecutive assessments, has not increased their

15 risk of recidivism, shall earn an additional

16 5 days of time credits for every 30 days of

17 successful participation in evidence-based

18 recidivism reduction programming or productive activities.

20   ' '(B) AVAILABILITY.—A prisoner may not

21 earn time credits under this paragraph for an

22 evidence-based recidivism reduction program

23 that the prisoner successfully completed—

24   ' '(i) prior to the date of enactment of

25 this subchapter; or

Appendix A


12

† S 756 EAS

1   ' '(ii) during official detention prior to

2 the date that the prisoner' s sentence commences under section 3585(a).

4   ' '(C) APPLICATION OF TIME CREDITS TO5

WARD PRERELEASE CUSTODY OR SUPERVISED

6 RELEASE.—Time credits earned under this paragraph by prisoners who successfully participate

8 in recidivism reduction programs or productive

9 activities shall be applied toward time in

10 prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section

13 3624(g), into prerelease custody or supervised release.

15   ' '(D) INELIGIBLE PRISONERS.—A prisoner

16 is ineligible to receive time credits under this

17 paragraph if the prisoner is serving a sentence

18 for a conviction under any of the following provisions of law:

20   ' '(i) Section 32, relating to destruction

9

21 *of aircraft or aircraft facilities.*
22 *' '(ii) Section 33, relating to destruction*
23 *of motor vehicles or motor vehicle facilities.*
24 *' '(iii) Section 36, relating to drive-by*
25 *shootings.*
Appendix A

**13**
† S 756 EAS
1 *' '(iv) Section 81, relating to arson*
2 *within special maritime and territorial jurisdiction.*
4 *' '(v) Section 111(b), relating to assaulting, resisting, or*
*impeding certain officers or employees using a deadly or dangerous*
*weapon or inflicting bodily injury.*
8 *' '(vi) Paragraph (1), (7), or (8) of section 113(a), relating*
*to assault with intent*
10 *to commit murder, assault resulting in substantial bodily injury*
*to a spouse or inti*12
*mate partner, a dating partner, or an individual who has not*
*attained the age of 16*
14 *years, or assault of a spouse, intimate partner, or dating*
*partner by strangling, suffocating, or attempting to strangle or*
*suffocate.*
18 *' '(vii) Section 115, relating to influencing, impeding, or*
*retaliating against a*
20 *Federal official by injuring a family member, except for a*
*threat made in violation of*
22 *that section.*
23 *' '(viii) Section 116, relating to female*
24 *genital mutilation.*
Appendix A

**14**
† S 756 EAS
1 *' '(ix) Section 117, relating to domestic*
2 *assault by a habitual offender.*
3 *' '(x) Any section of chapter 10, relating*

4 *to biological weapons.*
5 ' '*(xi) Any section of chapter 11B, relating to chemical*
*weapons.*
7 ' '*(xii) Section 351, relating to Congressional, Cabinet, and*
*Supreme Court assassination, kidnapping, and assault.*
10 ' '*(xiii) Section 521, relating to criminal street gangs.*
12 ' '*(xiv) Section 751, relating to prisoners in custody of an*
*institution or officer.*
14 ' '*(xv) Section 793, relating to gathering, transmitting, or*
*losing defense information.*
17 ' '*(xvi) Section 794, relating to gathering or delivering*
*defense information to*
19 *aid a foreign government.*
20 ' '*(xvii) Any section of chapter 39, relating to explosives and*
*other dangerous articles, except for section 836 (relating to the*
23 *transportation of fireworks into a State*
24 *prohibiting sale or use).*
Appendix A

15
† S 756 EAS
1 ' '*(xviii) Section 842(p), relating to distribution of*
*information relating to explosives, destructive devices, and*
*weapons of*
4 *mass destruction, but only if the conviction*
5 *involved a weapon of mass destruction (as*
6 *defined in section 2332a(c)).*
7 ' '*(xix) Subsection (f)(3), (h), or (i) of*
8 *section 844, relating to the use of fire or an*
9 *explosive.*
10 ' '*(xx) Section 871, relating to threats*
11 *against the President and successors to the*
12 *Presidency.*
13 ' '*(xxi) Section 879, relating to threats*
14 *against former Presidents and certain other*
15 *persons.*

16 ' '(xxii) Section 924(c), relating to un17
lawful possession or use of a firearm during
18 and in relation to any crime of violence or
19 drug trafficking crime.
20 ' '(xxiii) Section 1030(a)(1), relating to
21 fraud and related activity in connection
22 with computers.
23 ' '(xxiv) Section 1091, relating to genocide.
Appendix A

16
† S 756 EAS
1 ' '(xxv) Any section of chapter 51, relating to homicide, except
for section 1112 (relating to manslaughter), 1113 (relating to
4 attempt to commit murder or manslaughter,
5 but only if the conviction was for an attempt to commit
manslaughter), 1115 (relating to misconduct or neglect of ship
officers), or 1122 (relating to protection
9 against the human immunodeficiency
10 virus).
11 ' '(xxvi) Any section of chapter 55, relating to kidnapping.
13 ' '(xxvii) Any offense under chapter 77,
14 relating to peonage, slavery, and trafficking
15 in persons, except for sections 1593 through
16 1596.
17 ' '(xxviii) Section 1751, relating to
18 Presidential and Presidential staff assassination, kidnapping,
and assault.
20 ' '(xxix) Section 1791, relating to pro21
viding or possessing contraband in prison.
22 ' '(xxx) Section 1792, relating to mutiny and riots.
Appendix A

17
† S 756 EAS
1 ' '(xxxi) Section 1841(a)(2)(C), relating
2 to intentionally killing or attempting to kill

12

3 *an unborn child.*
4 *' '(xxxii) Section 1992, relating to terrorist attacks and other violence against*
6 *railroad carriers and against mass transportation systems on land, on water, or*
8 *through the air.*
9 *' '(xxxiii) Section 2113(e), relating to*
10 *bank robbery resulting in death.*
11 *' '(xxxiv) Section 2118(c), relating to*
12 *robberies and burglaries involving controlled*
13 *substances resulting in assault, putting in*
14 *jeopardy the life of any person by the use*
15 *of a dangerous weapon or device, or death.*
16 *' '(xxxv) Section 2119, relating to taking a motor vehicle (commonly referred to*
18 *as 'carjacking').*
19 *' '(xxxvi) Any section of chapter 105,*
20 *relating to sabotage, except for section 2152.*
21 *' '(xxxvii) Any section of chapter 109A,*
22 *relating to sexual abuse.*
23 *' '(xxxviii) Section 2250, relating to*
24 *failure to register as a sex offender.*
Appendix A

18
† S 756 EAS
1 *' '(xxxix) Section 2251, relating to the*
2 *sexual exploitation of children.*
3 *' '(xl) Section 2251A, relating to the*
4 *selling or buying of children.*
5 *' '(xli) Section 2252, relating to certain*
6 *activities relating to material involving the*
7 *sexual exploitation of minors.*
8 *' '(xlii) Section 2252A, relating to certain activities involving material constituting or containing child pornography.*
11 *' '(xliii) Section 2260, relating to the*

12 *production of sexually explicit depictions of*
13 *a minor for importation into the United*
14 *States.*
15 *' '(xliv) Section 2283, relating to the*
16 *transportation of explosive, biological, chemical, or*
*radioactive or nuclear materials.*
18 *' '(xlv) Section 2284, relating to the*
19 *transportation of terrorists.*
20 *' '(xlvi) Section 2291, relating to the destruction of a vessel*
*or maritime facility,*
22 *but only if the conduct that led to the conviction involved a*
*substantial risk of death*
24 *or serious bodily injury.*
Appendix A

19
† S 756 EAS
1 *' '(xlvii) Any section of chapter 113B,*
2 *relating to terrorism.*
3 *' '(xlviii) Section 2340A, relating to*
4 *torture.*
5 *' '(xlix) Section 2381, relating to treason.*
7 *' '(l) Section 2442, relating to the recruitment or use of child*
*soldiers.*
9 *' '(li) An offense described in section*
10 *3559(c)(2)(F), for which the offender was*
11 *sentenced to a term of imprisonment of*
12 *more than 1 year, if the offender has a previous conviction, for*
*which the offender*
14 *served a term of imprisonment of more than*
15 *1 year, for a Federal or State offense, by*
16 *whatever designation and wherever committed, consisting of*
*murder (as described*
18 *in section 1111), voluntary manslaughter*
19 *(as described in section 1112), assault with*
20 *intent to commit murder (as described in*

14

21 *section 113(a)), aggravated sexual abuse*
22 *and sexual abuse (as described in sections*
23 *2241 and 2242), abusive sexual contact (as*
24 *described in sections 2244(a)(1) and (a)(2)),*
25 *kidnapping (as described in chapter 55),*
Appendix A

20
† S 756 EAS
1 *carjacking (as described in section 2119),*
2 *arson (as described in section 844(f)(3), (h),*
3 *or (i)), or terrorism (as described in chapter*
4 *113B).*
5 *' '(lii) Section 57(b) of the Atomic Energy Act of 1954 (42*
*U.S.C. 2077(b)), relating to the engagement or participation in*
8 *the development or production of special nu-*9
*clear material.*
10 *' '(liii) Section 92 of the Atomic Energy*
11 *Act of 1954 (42 U.S.C. 2122), relating to*
12 *prohibitions governing atomic weapons.*
13 *' '(liv) Section 101 of the Atomic Energy Act of 1954 (42*
*U.S.C. 2131), relating*
15 *to the atomic energy license requirement.*
16 *' '(lv) Section 224 or 225 of the Atomic*
17 *Energy Act of 1954 (42 U.S.C. 2274, 2275),*
18 *relating to the communication or receipt of*
19 *restricted data.*
20 *' '(lvi) Section 236 of the Atomic Energy Act of 1954 (42*
*U.S.C. 2284), relating*
22 *to the sabotage of nuclear facilities or fuel.*
23 *' '(lvii) Section 60123(b) of title 49, relating to damaging or*
*destroying a pipeline*
25 *facility, but only if the conduct which led to*
Appendix A

21
† S 756 EAS

1 *the conviction involved a substantial risk of*
2 *death or serious bodily injury.*
3 *' '(lviii) Section 401(a) of the Controlled Substances Act (21*
*U.S.C. 841), relating to manufacturing or distributing a*
6 *controlled substance in the case of a conviction for an offense*
*described in subparagraph (A), (B), or (C) of subsection (b)(1)*
9 *of that section for which death or serious*
10 *bodily injury resulted from the use of such*
11 *substance.*
12 *' '(lix) Section 276(a) of the Immigration and Nationality Act*
*(8 U.S.C. 1326),*
14 *relating to the reentry of a removed alien,*
15 *but only if the alien is described in paragraph (1) or (2) of*
*subsection (b) of that*
17 *section.*
18 *' '(lx) Section 277 of the Immigration*
19 *and Nationality Act (8 U.S.C. 1327), relating to aiding or*
*assisting certain aliens to*
21 *enter the United States.*
22 *' '(lxi) Section 278 of the Immigration*
23 *and Nationality Act (8 U.S.C. 1328), relating to the importation*
*of an alien into the*
25 *United States for an immoral purpose.*
Appendix A

22
† S 756 EAS
1 *' '(lxii) Any section of the Export Ad-*2
*ministration Act of 1979 (50 U.S.C. 4611 et*
3 *seq.)*
4 *' '(lxiii) Section 206 of the International Emergency Economic*
*Powers Act*
6 *(50 U.S.C. 1705).*
7 *' '(lxiv) Section 601 of the National Security Act of 1947 (50*
*U.S.C. 3121), relating to the protection of identities of certain*

10 *United States undercover intelligence officers, agents, informants, and sources.*

12 *' '(lxv) Subparagraph (A)(i) or (B)(i)*
13 *of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(A) or (2)(A) of section 1010(b) of*
16 *the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to*
18 *manufacturing, distributing, dispensing, or*
19 *possessing with intent to manufacture, distribute, dispense, or knowingly importing or*
21 *exporting, a mixture or substance containing a detectable amount of heroin if the*
23 *sentencing court finds that the offender was*
24 *an organizer, leader, manager, or supervisor*
25 *of others in the offense, as determined under*

Appendix A

23
† S 756 EAS

1 *the guidelines promulgated by the United*
2 *States Sentencing Commission.*
3 *' '(lxvi) Subparagraph (A)(vi) or*
4 *(B)(vi) of section 401(b)(1) of the Controlled*
5 *Substances Act (21 U.S.C. 841(b)(1)) or*
6 *paragraph (1)(F) or (2)(F) of section*
7 *1010(b) of the Controlled Substances Import*
8 *and Export Act (21 U.S.C. 960(b)), relating*
9 *to manufacturing, distributing, dispensing,*
10 *or possessing with intent to manufacture,*
11 *distribute, or dispense, a mixture or sub*12
*stance containing a detectable amount of Nphenyl-N-[1-(2-phenylethyl)-4-piperidinyl]*
14 *propanamide, or any analogue thereof.*
15 *' '(lxvii) Subparagraph (A)(viii) or*
16 *(B)(viii) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1))*

17

18 *or paragraph (1)(H) or (2)(H) of section*
19 *1010(b) the Controlled Substances Import*
20 *and Export Act (21 U.S.C. 960(b)), relating*
21 *to manufacturing, distributing, dispensing,*
22 *or possessing with intent to manufacture,*
23 *distribute, or dispense, or knowingly importing or exporting, a mixture of substance*
25 *containing a detectable amount of meth–*
Appendix A

24
† S 756 EAS
1 *amphetamine, its salts, isomers, or salts of*
2 *its isomers, if the sentencing court finds*
3 *that the offender was an organizer, leader,*
4 *manager, or supervisor of others in the offense, as determined under the guidelines*
6 *promulgated by the United States Sentencing Commission.*
8 *' '(lxviii) Subparagraph (A) or (B) of*
9 *section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1) or (2) of section 1010(b) of the*
12 *Controlled Substances Import and Export*
13 *Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance,*
17 *or knowingly importing or exporting a controlled substance, if the sentencing court*
19 *finds that–*
20 *' '(I) the offense involved a mixture*
21 *or substance containing a detectable*
22 *amount of N–phenyl–N–[1–(2–*
23 *phenylethyl)–4–piperidinyl]*
24 *propanamide, or any analogue thereof;*
25 *and*
Appendix A

25
† S 756 EAS

1    ' '(II) the offender was an organizer, leader, manager, or supervisor of
3 others in the offense, as determined
4 under the guidelines promulgated by
5 the United States Sentencing Commission.
7    ' '(E) DEPORTABLE PRISONERS INELIGIBLE
8 TO APPLY TIME CREDITS. —
9    ' '(i) IN GENERAL.—A prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a
12 final order of removal under any provision
13 of the immigration laws (as such term is
14 defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C.
16 1101(a)(17))).
17    ' '(ii) PROCEEDINGS.—The Attorney
18 General, in consultation with the Secretary
19 of Homeland Security, shall ensure that
20 any alien described in section 212 or 237 of
21 the Immigration and Nationality Act (8
22 U.S.C. 1182, 1227) who seeks to earn time
23 credits are subject to proceedings described
24 in section 238(a) of that Act (8 U.S.C.

Appendix A

26
† S 756 EAS

1 1228(a)) at a date as early as practicable
2 during the prisoner's incarceration.
3    ' '(5) RISK REASSESSMENTS AND LEVEL ADJUST4-
MENT.—A prisoner who successfully participates in
5 evidence-based recidivism reduction programming or
6 productive activities shall receive periodic risk reassessments
not less often than annually, and a prisoner
8 determined to be at a medium or high risk of
9 recidivating and who has less than 5 years until his

19

10 *or her projected release date shall receive more frequent risk*
*reassessments. If the reassessment shows*
12 *that the prisoner's risk of recidivating or specific*
13 *needs have changed, the Bureau of Prisons shall update the*
*determination of the prisoner's risk of*
15 *recidivating or information regarding the prisoner's*
16 *specific needs and reassign the prisoner to appropriate*
*evidence-based recidivism reduction programming or productive*
*activities based on such changes.*
19 ''*(6) RELATION TO OTHER INCENTIVE PRO*20
*GRAMS.—The incentives described in this subsection*
21 *shall be in addition to any other rewards or incentives for*
*which a prisoner may be eligible.*
23 ''*(e) PENALTIES.—The Director of the Bureau of Prisons shall*
*develop guidelines for the reduction of rewards and*
25 *incentives earned under subsection (d) for prisoners who*
Appendix A

27
† S 756 EAS
1 *violate prison rules or evidence-based recidivism reduction*
2 *program or productive activity rules, which shall provide—*
3 ''*(1) general levels of violations and resulting reductions;*
5 ''*(2) that any reduction that includes the loss of*
6 *time credits shall require written notice to the prisoner, shall*
*be limited to time credits that a prisoner*
8 *earned as of the date of the prisoner's rule violation,*
9 *and shall not include any future time credits that the*
10 *prisoner may earn; and*
11 ''*(3) for a procedure to restore time credits that*
12 *a prisoner lost as a result of a rule violation, based*
13 *on the prisoner's individual progress after the date of*
14 *the rule violation.*
15 ''*(f) BUREAU OF PRISONS TRAINING.—The Attorney*
16 *General shall develop and implement training programs for*

17 *Bureau of Prisons officers and employees responsible for administering the System, which shall include—*

19 *' '(1) initial training to educate officers and employees on how to use the System in an appropriate*

21 *and consistent manner, as well as the reasons for*

22 *using the System;*

23 *' '(2) continuing education;*

24 *' '(3) periodic training updates; and*

Appendix A

28

† S 756 EAS

1 *' '(4) a requirement that such officers and employees demonstrate competence in administering the*

3 *System, including interrater reliability, on a biannual basis.*

5 *' '(g) QUALITY ASSURANCE.—In order to ensure that*

6 *the Bureau of Prisons is using the System in an appropriate and consistent manner, the Attorney General shall*

8 *monitor and assess the use of the System, which shall include conducting annual audits of the Bureau of Prisons*

10 *regarding the use of the System.*

11 *' '(h) DYSLEXIA SCREENING. —*

12 *' '(1) SCREENING.—The Attorney General shall*

13 *incorporate a dyslexia screening program into the*

14 *System, including by screening for dyslexia during—*

15 *' '(A) the intake process; and*

16 *' '(B) each periodic risk reassessment of a*

17 *prisoner.*

18 *' '(2) TREATMENT.—The Attorney General shall*

19 *incorporate programs designed to treat dyslexia into*

20 *the evidence-based recidivism reduction programs or*

21 *productive activities required to be implemented*

22 *under this section. The Attorney General may also in* 23 *corporate programs designed to treat other learning*

24 *disabilities.*

Appendix A

21

29

† S 756 EAS

1 *"§ 3633. Evidence-based recidivism reduction program*

2 *and recommendations*

3 ' '(a) IN GENERAL.—Prior to releasing the System, in

4 consultation with the Independent Review Committee authorized by

the First Step Act of 2018, the Attorney General

6 shall—

7 ' '(1) review the effectiveness of evidence-based recidivism

reduction programs that exist as of the date

9 of enactment of this subchapter in prisons operated by

10 the Bureau of Prisons;

11 ' '(2) review available information regarding the

12 effectiveness of evidence-based recidivism reduction

13 programs and productive activities that exist in

14 State-operated prisons throughout the United States;

15 ' '(3) identify the most effective evidence-based recidivism

reduction programs;

17 ' '(4) review the policies for entering into evidence-based

recidivism reduction partnerships described in section 3621(h)(5);

and

20 ' '(5) direct the Bureau of Prisons regarding—

21 ' '(A) evidence-based recidivism reduction

22 programs;

23 ' '(B) the ability for faith-based organizations to function as

a provider of educational

25 evidence-based programs outside of the religious

Appendix A

30

† S 756 EAS

1 classes and services provided through the Chaplaincy; and

3 ' '(C) the addition of any new effective evidence-based

recidivism reduction programs that

5 the Attorney General finds.

6 ' '(b) REVIEW AND RECOMMENDATIONS REGARDING

7 *DYSLEXIA MITIGATION.—In carrying out subsection (a),*
8 *the Attorney General shall consider the prevalence and*
9 *mitigation of dyslexia in prisons, including by—*
10 *''(1) reviewing statistics on the prevalence of*
11 *dyslexia, and the effectiveness of any programs implemented to*
*mitigate the effects of dyslexia, in prisons*
13 *operated by the Bureau of Prisons and State-operated*
14 *prisons throughout the United States; and*
15 *''(2) incorporating the findings of the Attorney*
16 *General under paragraph (1) of this subsection into*
17 *any directives given to the Bureau of Prisons under*
18 *paragraph (5) of subsection (a).*
19 **"§ 3634. Report**
20 *''Beginning on the date that is 2 years after the date*
21 *of enactment of this subchapter, and annually thereafter for*
22 *a period of 5 years, the Attorney General shall submit a*
23 *report to the Committees on the Judiciary of the Senate*
24 *and the House of Representatives and the Subcommittees*
25 *on Commerce, Justice, Science, and Related Agencies of the*
Appendix A

**31**

† S 756 EAS
1 *Committees on Appropriations of the Senate and the House*
2 *of Representatives that contains the following:*
3 *''(1) A summary of the activities and accomplishments of the*
*Attorney General in carrying out*
5 *this Act.*
6 *''(2) A summary and assessment of the types and*
7 *effectiveness of the evidence-based recidivism reduction*
8 *programs and productive activities in prisons operated by the*
*Bureau of Prisons, including—*
10 *''(A) evidence about which programs have*
11 *been shown to reduce recidivism;*
12 *''(B) the capacity of each program and activity at each*
*prison, including the number of*

14 *prisoners along with the recidivism risk of each*
15 *prisoner enrolled in each program; and*
16 *' '(C) identification of any gaps or shortages*
17 *in capacity of such programs and activities.*
18 *' '(3) Rates of recidivism among individuals who*
19 *have been released from Federal prison, based on the*
20 *following criteria:*
21 *' '(A) The primary offense of conviction.*
22 *' '(B) The length of the sentence imposed and*
23 *served.*
Appendix A

32
† S 756 EAS
1 *' '(C) The Bureau of Prisons facility or facilities in which the prisoner' s sentence was*
3 *served.*
4 *' '(D) The evidence-based recidivism reduction programming that the prisoner successfully*
6 *completed, if any.*
7 *' '(E) The prisoner' s assessed and reassessed*
8 *risk of recidivism.*
9 *' '(F) The productive activities that the prisoner successfully completed, if any.*
11 *' '(4) The status of prison work programs at facilities operated by the Bureau of Prisons, including—*
14 *' '(A) a strategy to expand the availability of*
15 *such programs without reducing job opportunities for workers in the United States who are not*
17 *in the custody of the Bureau of Prisons, including the feasibility of prisoners manufacturing*
19 *products purchased by Federal agencies that are*
20 *manufactured overseas;*
21 *' '(B) an assessment of the feasibility of expanding such programs, consistent with the*
23 *strategy required under subparagraph (A), with*

24

24 *the goal that 5 years after the date of enactment*
25 *of this subchapter, not less than 75 percent of eli-*
Appendix A

**33**
† S 756 EAS
1 *gible minimum- and low-risk offenders have the*
2 *opportunity to participate in a prison work program for not less than 20 hours per week; and*
4 *' '(C) a detailed discussion of legal authorities that would be useful or necessary to achieve*
6 *the goals described in subparagraphs (A) and*
7 *(B).*
8 *' '(5) An assessment of the Bureau of Prisons'*
9 *compliance with section 3621(h).*
10 *' '(6) An assessment of progress made toward carrying out the purposes of this subchapter, including*
12 *any savings associated with-*
13 *' '(A) the transfer of prisoners into prerelease*
14 *custody or supervised release under section*
15 *3624(g), including savings resulting from the*
16 *avoidance or deferral of future construction, acquisition, and operations costs; and*
18 *' '(B) any decrease in recidivism that may*
19 *be attributed to the System or the increase in*
20 *evidence-based recidivism reduction programs required under this subchapter.*
22 *' '(7) An assessment of budgetary savings resulting from this subchapter, including-*
24 *' '(A) a summary of the amount of savings*
25 *resulting from the transfer of prisoners into*
Appendix A

**34**
† S 756 EAS
1 *prerelease custody under this chapter, including*
2 *savings resulting from the avoidance or deferral*

3 *of future construction, acquisition, or operations*
4 *costs;*
5 *' '(B) a summary of the amount of savings*
6 *resulting from any decrease in recidivism that*
7 *may be attributed to the implementation of the*
8 *risk and needs assessment system or the increase*
9 *in recidivism reduction programs and productive*
10 *activities required by this subchapter;*
11 *' '(C) a strategy to reinvest the savings described in*
*subparagraphs (A) and (B) in other—*
13 *' '(i) Federal, State, and local law enforcement activities;*
*and*
15 *' '(ii) expansions of recidivism reduction programs and*
*productive activities in*
17 *the Bureau of Prisons; and*
18 *' '(D) a description of how the reduced expenditures on Federal*
*corrections and the budgetary savings resulting from this*
*subchapter are*
21 *currently being used and will be used to—*
22 *' '(i) increase investment in law enforcement and crime*
*prevention to combat*
24 *gangs of national significance and highlevel drug traffickers*
*through the High In—*

Appendix A

35
† S 756 EAS
1 *tensity Drug Trafficking Areas Program*
2 *and other task forces;*
3 *' '(ii) hire, train, and equip law enforcement officers and*
*prosecutors; and*
5 *' '(iii) promote crime reduction programs using evidence-based*
*practices and*
7 *strategic planning to help reduce crime and*
8 *criminal recidivism.*
9 *' '(8) Statistics on—*

10  ‘ ‘(A) the prevalence of dyslexia among prisoners in prisons operated by the Bureau of Prisons; and

13  ‘ ‘(B) any change in the effectiveness of dyslexia mitigation programs among such prisoners

15 that may be attributed to the incorporation of

16 dyslexia screening into the System and of dyslexia treatment into the evidence-based recidivism reduction programs, as required under this

19 chapter.

20 "§ 3635. Definitions

21  ‘ ‘In this subchapter the following definitions apply:

22  ‘ ‘(1) DYSLEXIA.—The term  ‘dyslexia’  means an

23 unexpected difficulty in reading for an individual

24 who has the intelligence to be a much better reader,

25 most commonly caused by a difficulty in the phono-

Appendix A

36

† S 756 EAS

1 logical processing (the appreciation of the individual

2 sounds of spoken language), which affects the ability

3 of an individual to speak, read, and spell.

4  ‘ ‘(2) DYSLEXIA SCREENING PROGRAM.—The term

5  ‘dyslexia screening program’  means a screening program for dyslexia that is—

7  ‘ ‘(A) evidence-based (as defined in section

8 8101(21) of the Elementary and Secondary Education Act of 1965 (20 U.S.C. 7801(21))) with

10 proven psychometrics for validity;

11  ‘ ‘(B) efficient and low-cost; and

12  ‘ ‘(C) readily available.

13  ‘ ‘(3) EVIDENCE-BASED RECIDIVISM REDUCTION

14 PROGRAM.—The term  ‘evidence-based recidivism reduction program’ means either a group or individual

16 activity that—

17  ‘ ‘(A) has been shown by empirical evidence

18 *to reduce recidivism or is based on research indicating that it*
*is likely to be effective in reducing*
20 *recidivism;*
21  *' '(B) is designed to help prisoners succeed in*
22 *their communities upon release from prison; and*
23  *' '(C) may include—*
Appendix A

37
† S 756 EAS

1  *' '(i) social learning and communication, interpersonal, anti-bullying, rejection*
3 *response, and other life skills;*
4  *' '(ii) family relationship building,*
5 *structured parent-child interaction, and*
6 *parenting skills;*
7  *' '(iii) classes on morals or ethics;*
8  *' '(iv) academic classes;*
9  *' '(v) cognitive behavioral treatment;*
10  *' '(vi) mentoring;*
11  *' '(vii) substance abuse treatment;*
12  *' '(viii) vocational training;*
13  *' '(ix) faith-based classes or services;*
14  *' '(x) civic engagement and reintegrative community services;*
16  *' '(xi) a prison job, including through a*
17 *prison work program;*
18  *' '(xii) victim impact classes or other*
19 *restorative justice programs; and*
20  *' '(xiii) trauma counseling and trauma*
*informed support programs.*
22  *' '(4) PRISONER.—The term 'prisoner' means a*
23 *person who has been sentenced to a term of imprisonment pursuant*
*to a conviction for a Federal criminal*
Appendix A

38
† S 756 EAS

1 offense, or a person in the custody of the Bureau of
2 Prisons.
3 ' '(5) PRODUCTIVE ACTIVITY.—The term 'productive activity' means
either a group or individual activity that is designed to allow
prisoners determined
6 as having a minimum or low risk of recidivating to
7 remain productive and thereby maintain a minimum
8 or low risk of recidivating, and may include the delivery of the
programs described in paragraph (1) to
10 other prisoners.
11 ' '(6) RISK AND NEEDS ASSESSMENT TOOL.—The
12 term 'risk and needs assessment tool' means an objective and
statistically validated method through which
14 information is collected and evaluated to determine—
15 ' '(A) as part of the intake process, the risk
16 that a prisoner will recidivate upon release from
17 prison;
18 ' '(B) the recidivism reduction programs
19 that will best minimize the risk that the prisoner
20 will recidivate upon release from prison; and
21 ' '(C) the periodic reassessment of risk that
22 a prisoner will recidivate upon release from prison, based on
factors including indicators of
24 progress and of regression, that are dynamic and
Appendix A

39
† S 756 EAS
1 that can reasonably be expected to change while
2 in prison.' '.
3 (b) CLERICAL AMENDMENT.—The table of subchapters
4 for chapter 229 of title 18, United States Code, is amended
5 by adding at the end the following:
"D. Risk and Needs Assessment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3631".
6 SEC. 102. IMPLEMENTATION OF SYSTEM AND RECOMMENDATIONS BY BUREAU OF PRISONS.

8 *(a) IMPLEMENTATION OF SYSTEM GENERALLY.—Section 3621 of title 18, United States Code, is amended by*
10 *adding at the end the following:*
11 *' '(h) IMPLEMENTATION OF RISK AND NEEDS ASSESSMENT SYSTEM.—*
13 *' '(1) IN GENERAL.—Not later than 180 days*
14 *after the Attorney General completes and releases the*
15 *risk and needs assessment system (referred to in this*
16 *subsection as the 'System') developed under subchapter D, the Director of the Bureau of Prisons*
18 *shall, in accordance with that subchapter—*
19 *' '(A) implement and complete the initial intake risk and needs assessment for each prisoner*
21 *(including for each prisoner who was a prisoner*
22 *prior to the effective date of this subsection), regardless of the prisoner's length of imposed term*
24 *of imprisonment, and begin to assign prisoners*
Appendix A

40
† S 756 EAS
1 *to appropriate evidence-based recidivism reduction programs based on that determination;*
3 *' '(B) begin to expand the effective evidence based recidivism reduction programs and productive activities it offers and add any new evidence-based recidivism reduction programs and*
7 *productive activities necessary to effectively implement the System; and*
9 *' '(C) begin to implement the other risk and*
10 *needs assessment tools necessary to effectively implement the System over time, while prisoners*
12 *are participating in and completing the effective*
13 *evidence-based recidivism reduction programs*
14 *and productive activities.*
15 *' '(2) PHASE-IN.—In order to carry out paragraph (1), so that every prisoner has the opportunity*
17 *to participate in and complete the type and amount*

18 *of evidence-based recidivism reduction programs or*
19 *productive activities they need, and be reassessed for*
20 *recidivism risk as necessary to effectively implement*
21 *the System, the Bureau of Prisons shall—*
22 *' '(A) provide such evidence-based recidivism*
23 *reduction programs and productive activities for*
24 *all prisoners before the date that is 2 years after*
25 *the date on which the Bureau of Prisons com-*
Appendix A

41
† S 756 EAS
1 *pletes a risk and needs assessment for each prisoner under
paragraph (1)(A); and*
3 *' '(B) develop and validate the risk and*
4 *needs assessment tool to be used in the reassessments of risk of
recidivism, while prisoners are*
6 *participating in and completing evidence-based*
7 *recidivism reduction programs and productive*
8 *activities.*
9 *' '(3) PRIORITY DURING PHASE-IN. —During the*
10 *2-year period described in paragraph (2)(A), the priority for
such programs and activities shall be accorded based on a prisoner
' s proximity to release*
13 *date.*
14 *' '(4) PRELIMINARY EXPANSION OF EVIDENCE*15
*BASED RECIDIVISM REDUCTION PROGRAMS AND AU*16
*THORITY TO USE INCENTIVES. —Beginning on the*
17 *date of enactment of this subsection, the Bureau of*
18 *Prisons may begin to expand any evidence-based recidivism
reduction programs and productive activities that exist at a
prison as of such date, and may*
21 *offer to prisoners who successfully participate in such*
22 *programs and activities the incentives and rewards*
23 *described in subchapter D.*
24 *' '(5) RECIDIVISM REDUCTION PARTNERSHIPS. —*

25 *In order to expand evidence-based recidivism reduc-*
Appendix A

42

† S 756 EAS

1 *tion programs and productive activities, the Attorney*
2 *General shall develop policies for the warden of each*
3 *prison of the Bureau of Prisons to enter into partner*
*ships, subject to the availability of appropriations,*
5 *with any of the following:*
6 *' '(A) Nonprofit and other private organizations, including*
*faith-based, art, and community-based organizations that will*
*deliver recidivism reduction programming on a paid or volunteer*
*basis.*
11 *' '(B) Institutions of higher education (as defined in section*
*101 of the Higher Education Act*
13 *of 1965 (20 U.S.C. 1001)) that will deliver instruction on a*
*paid or volunteer basis.*
15 *' '(C) Private entities that will—*
16 *' '(i) deliver vocational training and*
17 *certifications;*
18 *' '(ii) provide equipment to facilitate*
19 *vocational training or employment opportunities for prisoners;*
21 *' '(iii) employ prisoners; or*
22 *' '(iv) assist prisoners in prerelease custody or supervised*
*release in finding employment.*
Appendix A

43

† S 756 EAS

1 *' '(D) Industry-sponsored organizations that*
2 *will deliver workforce development and training,*
3 *on a paid or volunteer basis.*
4 *' '(6) REQUIREMENT TO PROVIDE PROGRAMS TO*
5 *ALL PRISONERS; PRIORITY.—The Director of the Bureau of Prisons shall*
*provide all prisoners with the*
7 *opportunity to actively participate in evidence-based*

8 *recidivism reduction programs or productive activities, according*
*to their specific criminogenic needs,*
10 *throughout their entire term of incarceration. Priority*
11 *for participation in recidivism reduction programs*
12 *shall be given to medium-risk and high-risk prisoners,*
13 *with access to productive activities given to minimum-risk and*
*low-risk prisoners.*
15 ' '(7) DEFINITIONS.—The terms in this subsection*
16 *have the meaning given those terms in section 3635.' ' .*
17 *(b) PRERELEASE CUSTODY.—*
18 *(1) IN GENERAL.—Section 3624 of title 18,*
19 *United States Code, is amended—*
20 *(A) in subsection (b)(1)—*
21 *(i) by striking  ' ', beyond the time*
22 *served, of up to 54 days at the end of each*
23 *year of the prisoner' s term of imprisonment,*
24 *beginning at the end of the first year of the*
25 *term,' '  and inserting  ' 'of up to 54 days for*
Appendix A

44
† S 756 EAS
1 *each year of the prisoner' s sentence imposed*
2 *by the court,' ' ; and*
3 *(ii) by striking  ' 'credit for the last year*
4 *or portion of a year of the term of imprisonment shall be*
*prorated and credited within the last six weeks of the sentence'*
*' and*
7 *inserting  ' 'credit for the last year of a term*
8 *of imprisonment shall be credited on the*
9 *first day of the last year of the term of imprisonment' ' ; and*
11 *(B) by adding at the end the following:*
12 ' '(g) PRERELEASE CUSTODY OR SUPERVISED RE13*
*LEASE FOR RISK AND NEEDS ASSESSMENT SYSTEM PARTICIPANTS.—*
15 ' '(1) ELIGIBLE PRISONERS.—This subsection ap16*
*plies in the case of a prisoner (as such term is defined*

33

17 *in section 3635) who—*
18 *‘ ‘(A) has earned time credits under the risk*
19 *and needs assessment system developed under*
20 *subchapter D (referred to in this subsection as*
21 *the ‘System’ ) in an amount that is equal to the*
22 *remainder of the prisoner’ s imposed term of imprisonment;*
24 *‘ ‘(B) has shown through the periodic risk reassessments a*
*demonstrated recidivism risk re-*
Appendix A

45
† S 756 EAS
1 *duction or has maintained a minimum or low*
2 *recidivism risk, during the prisoner’ s term of imprisonment;*
4 *‘ ‘(C) has had the remainder of the prisoner's*
5 *imposed term of imprisonment computed under*
6 *applicable law; and*
7 *‘ ‘(D)(i) in the case of a prisoner being*
8 *placed in prerelease custody, the prisoner—*
9 *‘ ‘(I) has been determined under the*
10 *System to be a minimum or low risk to*
11 *recidivate pursuant to the last 2 reassessments of the prisoner;*
*or*
13 *‘ ‘(II) has had a petition to be transferred to prerelease*
*custody or supervised release approved by the warden of the*
*prison,*
16 *after the warden’ s determination that—*
17 *‘ ‘(aa) the prisoner would not be a*
18 *danger to society if transferred to*
19 *prerelease custody or supervised release;*
21 *‘ ‘(bb) the prisoner has made a*
22 *good faith effort to lower their recidivism risk through*
*participation in recidivism reduction programs or productive*
*activities; and*
Appendix A

34

46
† S 756 EAS

1  ' '(cc) the prisoner is unlikely to
2 recidivate; or
3  ' '(ii) in the case of a prisoner being placed
4 in supervised release, the prisoner has been determined under the System to be a minimum or
6 low risk to recidivate pursuant to the last reassessment of the prisoner.
8  ' '(2) TYPES OF PRERELEASE CUSTODY.—A prisoner shall be placed in prerelease custody as follows:
10  ' '(A) HOME CONFINEMENT. —
11  ' '(i) IN GENERAL.—A prisoner placed
12 in prerelease custody pursuant to this sub13 section who is placed in home confinement
14 shall—
15  ' '(I) be subject to 24-hour electronic monitoring that enables the
17 prompt identification of the prisoner,
18 location, and time, in the case of any
19 violation of subclause (II);
20  ' '(II) remain in the prisoner's residence, except that the prisoner may
22 leave the prisoner's home in order to,
23 subject to the approval of the Director
24 of the Bureau of Prisons—
Appendix A

47
† S 756 EAS

1  ' '(aa) perform a job or job-related activities, including an apprenticeship, or participate in
4 job-seeking activities;
5  ' '(bb) participate in evidence based recidivism reduction programming or productive activities
8 assigned by the System, or similar
9 activities;

10 ' '(cc) perform community
11 service;
12 ' '(dd) participate in crime
13 victim restoration activities;
14 ' '(ee) receive medical treatment;
16 ' '(ff) attend religious activities; or
18 ' '(gg) participate in other
19 family-related activities that facilitate the prisoner's successful
21 reentry such as a family funeral,
22 a family wedding, or to visit a
23 family member who is seriously
24 ill; and
Appendix A

48
† S 756 EAS
1 ' '(III) comply with such other
2 conditions as the Director determines
3 appropriate.
4 ' '(ii) ALTERNATE MEANS OF MONI5
TORING.—If the electronic monitoring of a
6 prisoner described in clause (i)(I) is infeasible for technical
or religious reasons, the Director of the Bureau of Prisons may
use alternative means of monitoring a prisoner
10 placed in home confinement that the Director determines are as
effective or more effective than the electronic monitoring described
13 in clause (i)(I).
14 ' '(iii) MODIFICATIONS.—The Director
15 of the Bureau of Prisons may modify the
16 conditions described in clause (i) if the Director determines
that a compelling reason
18 exists to do so, and that the prisoner has
19 demonstrated exemplary compliance with
20 such conditions.

21 ' '(iv) DURATION.—Except as provided
22 in paragraph (4), a prisoner who is placed
23 in home confinement shall remain in home
24 confinement until the prisoner has served

Appendix A

49

† S 756 EAS

1 not less than 85 percent of the prisoner's
2 imposed term of imprisonment.
3 ' '(B) RESIDENTIAL REENTRY CENTER.—A
4 prisoner placed in prerelease custody pursuant
5 to this subsection who is placed at a residential
6 reentry center shall be subject to such conditions
7 as the Director of the Bureau of Prisons determines appropriate.
9 ' '(3) SUPERVISED RELEASE.—If the sentencing
10 court included as a part of the prisoner's sentence a
11 requirement that the prisoner be placed on a term of
12 supervised release after imprisonment pursuant to
13 section 3583, the Director of the Bureau of Prisons
14 may transfer the prisoner to begin any such term of
15 supervised release at an earlier date, not to exceed 12
16 months, based on the application of time credits
17 under section 3632.
18 ' '(4) DETERMINATION OF CONDITIONS.—In determining appropriate
conditions for prisoners placed in
20 prerelease custody pursuant to this subsection, the Director of
the Bureau of Prisons shall, to the extent
22 practicable, provide that increasingly less restrictive
23 conditions shall be imposed on prisoners who demonstrate
continued compliance with the conditions of

Appendix A

50

† S 756 EAS

1 such prerelease custody, so as to most effectively pre 2
pare such prisoners for reentry.

37

3  ' '(5) VIOLATIONS OF CONDITIONS.—If a prisoner
4 violates a condition of the prisoner's prerelease custody, the
Director of the Bureau of Prisons may impose such additional
conditions on the prisoner's
7 prerelease custody as the Director of the Bureau of
8 Prisons determines appropriate, or revoke the prisoner's
prerelease custody and require the prisoner to
10 serve the remainder of the term of imprisonment to
11 which the prisoner was sentenced, or any portion
12 thereof, in prison. If the violation is nontechnical in
13 nature, the Director of the Bureau of Prisons shall revoke the
prisoner's prerelease custody.
15  ' '(6) ISSUANCE OF GUIDELINES.—The Attorney
16 General, in consultation with the Assistant Director
17 for the Office of Probation and Pretrial Services, shall
18 issue guidelines for use by the Bureau of Prisons in
19 determining—
20  ' '(A) the appropriate type of prerelease custody or supervised
release and level of supervision for a prisoner placed on
prerelease custody pursuant to this subsection; and
24  ' '(B) consequences for a violation of a condition of such
prerelease custody by such a pris-
Appendix A

51
† S 756 EAS
1 oner, including a return to prison and a reassessment of
evidence-based recidivism risk level
3 under the System.
4  ' '(7) AGREEMENTS WITH UNITED STATES PROBA5
TION AND PRETRIAL SERVICES.—The Director of the
6 Bureau of Prisons shall, to the greatest extent practicable,
enter into agreements with United States Probation and Pretrial
Services to supervise prisoners
9 placed in home confinement under this subsection.
10 Such agreements shall—

11  ' '(A) authorize United States Probation and
12 Pretrial Services to exercise the authority granted to the Director pursuant to paragraphs (3)
14 and (4); and
15  ' '(B) take into account the resource requirements of United States Probation and Pretrial
17 Services as a result of the transfer of Bureau of
18 Prisons prisoners to prerelease custody or supervised release.
20  ' '(8) ASSISTANCE.—United States Probation and
21 Pretrial Services shall, to the greatest extent practicable, offer assistance to any prisoner not under its
23 supervision during prerelease custody under this subsection.
Appendix A                                                  `

52
† S 756 EAS
1  ' '(9) MENTORING, REENTRY, AND SPIRITUAL
2 SERVICES.—Any prerelease custody into which a prisoner is placed under this subsection may not include
4 a condition prohibiting the prisoner from receiving
5 mentoring, reentry, or spiritual services from a person who provided such services to the prisoner while
7 the prisoner was incarcerated, except that the warden
8 of the facility at which the prisoner was incarcerated
9 may waive the requirement under this paragraph if
10 the warden finds that the provision of such services
11 would pose a significant security risk to the prisoner,
12 persons who provide such services, or any other person. The warden shall provide written notice of any
14 such waiver to the person providing such services and
15 to the prisoner.
16  ' '(10) TIME LIMITS INAPPLICABLE.—The time
17 limits under subsections (b) and (c) shall not apply
18 to prerelease custody under this subsection.
19  ' '(11) PRERELEASE CUSTODY CAPACITY.—The
20 Director of the Bureau of Prisons shall ensure there

21 *is sufficient prerelease custody capacity to accommoate all*
*eligible prisoners.' ' .*
23 *(2) EFFECTIVE DATE.—The amendments made*
24 *by this subsection shall take effect beginning on the*
25 *date that the Attorney General completes and releases*
Appendix A

53
† S 756 EAS
1 *the risk and needs assessment system under subchapter D of*
*chapter 229 of title 18, United States*
3 *Code, as added by section 101(a) of this Act.*
4 *(3) APPLICABILITY.—The amendments made by*
5 *this subsection shall apply with respect to offenses*
6 *committed before, on, or after the date of enactment*
7 *of this Act, except that such amendments shall not*
8 *apply with respect to offenses committed before November 1, 1987.*
10 *SEC. 103. GAO REPORT.*
11 *Not later than 2 years after the Director of the Bureau*
12 *of Prisons implements the risk and needs assessment system*
13 *under section 3621 of title 18, United States Code, and*
14 *every 2 years thereafter, the Comptroller General of the*
15 *United States shall conduct an audit of the use of the risk*
16 *and needs assessment system at Bureau of Prisons facilities.*
17 *The audit shall include analysis of the following:*
18 *(1) Whether inmates are being assessed under the*
19 *risk and needs assessment system with the frequency*
20 *required under such section 3621 of title 18, United*
21 *States Code.*
22 *(2) Whether the Bureau of Prisons is able to offer*
23 *recidivism reduction programs and productive activities (as such*
*terms are defined in section 3635 of title*
Appendix A

54
† S 756 EAS
1 *18, United States Code, as added by section 101(a) of*

2 *this Act).*

3 *(3) Whether the Bureau of Prisons is offering the*
4 *type, amount, and intensity of recidivism reduction*
5 *programs and productive activities for prisoners to*
6 *earn the maximum amount of time credits for which*
7 *they are eligible.*

8 *(4) Whether the Attorney General is carrying out*
9 *the duties under section 3631(b) of title 18, United*
10 *States Code, as added by section 101(a) of this Act.*

11 *(5) Whether officers and employees of the Bureau*
12 *of Prisons are receiving the training described in section*
*3632(f) of title 18, United States Code, as added*
14 *by section 101(a) of this Act.*

15 *(6) Whether the Bureau of Prisons offers work*
16 *assignments to all prisoners who might benefit from*
17 *such an assignment.*

18 *(7) Whether the Bureau of Prisons transfers prisoners to*
*prerelease custody or supervised release as*
20 *soon as they are eligible for such a transfer under section*
*3624(g) of title 18, United States Code, as added*
22 *by section 102(b) of this Act.*

23 *(8) The rates of recidivism among similarly classified prisoners*
*to identify any unwarranted disparities, including disparities*
*among similarly classified*

Appendix A

55
† S 756 EAS

1 *prisoners of different demographic groups, in such*
2 *rates.*

3 ***SEC. 104. AUTHORIZATION OF APPROPRIATIONS.***

4 *(a) In General.—There is authorized to be appropriated to carry out*
*this title $75,000,000 for each of fiscal*
6 *years 2019 through 2023. Of the amount appropriated*
7 *under this subsection, 80 percent shall be reserved for use*
8 *by the Director of the Bureau of Prisons to implement the*

9 *system under section 3621(h) of title 18, United States*
10 *Code, as added by section 102(a) of this Act.*
11 *(b) SAVINGS.—It is the sense of Congress that any savings*
*associated with reductions in recidivism that result*
13 *from this title should be reinvested—*
14 *(1) to supplement funding for programs that increase public*
*safety by providing resources to State*
16 *and local law enforcement officials, including for the*
17 *adoption of innovative technologies and information*
18 *sharing capabilities;*
19 *(2) into evidence-based recidivism reduction programs offered by*
*the Bureau of Prisons; and*
21 *(3) into ensuring eligible prisoners have access to*
22 *such programs and productive activities offered by the*
23 *Bureau of Prisons.*
Appendix A

56
† S 756 EAS
1 **SEC. 105. RULE OF CONSTRUCTION.**
2 *Nothing in this Act, or the amendments made by this*
3 *Act, may be construed to provide authority to place a prisoner in*
*prerelease custody or supervised release who is serving a term of*
*imprisonment pursuant to a conviction for*
6 *an offense under the laws of one of the 50 States, or of a*
7 *territory or possession of the United States or to amend*
8 *or affect the enforcement of the immigration laws, as defined in*
*section 101 of the Immigration and Nationality*
10 *Act (8 U.S.C. 1101).*
11 **SEC. 106. FAITH-BASED CONSIDERATIONS.**
12 *(a) IN GENERAL.—In considering any program, treatment, regimen,*
*group, company, charity, person, or entity*
14 *of any kind under any provision of this Act, or the amendments*
*made by this Act, the fact that it may be or is faithbased may not*
*be a basis for any discrimination against*
17 *it in any manner or for any purpose.*

42

18 *(b) ELIGIBILITY FOR EARNED TIME CREDIT.—Participation in a faith-based program, treatment, or regimen*

20 *may qualify a prisoner for earned time credit under subchapter D of chapter 229 of title 18, United States Code,*

22 *as added by section 101(a) of this Act, however, the Director*
23 *of the Bureau of Prisons shall ensure that non-faith-based*
24 *programs that qualify for earned time credit are offered at*
25 *each Bureau of Prisons facility in addition to any such*
26 *faith-based programs.*

Appendix A

57

† S 756 EAS

1 *(c) LIMITATION ON ACTIVITIES.—A group, company,*
2 *charity, person, or entity may not engage in explicitly religious activities using direct financial assistance made*
4 *available under this title or the amendments made by this*
5 *title.*
6 *(d) RULE OF CONSTRUCTION.—Nothing in this Act, or*
7 *the amendments made by this Act, may be construed to*
8 *amend any requirement under Federal law or the Constitution of the United States regarding funding for faith-based*
10 *programs or activities.*

11 **SEC. 107. INDEPENDENT REVIEW COMMITTEE.**

12 *(a) IN GENERAL.—The Attorney General shall consult*
13 *with an Independent Review Committee in carrying out the*
14 *Attorney General' s duties under sections 3631(b), 3632 and*
15 *3633 of title 18, United States Code, as added by section*
16 *101(a) of this Act.*

17 *(b) FORMATION OF INDEPENDENT REVIEW COM\8*
*MITTEE.—The National Institute of Justice shall select a*
19 *nonpartisan and nonprofit organization with expertise in*
20 *the study and development of risk and needs assessment*
21 *tools to host the Independent Review Committee. The Independent Review Committee shall be established not later*
23 *than 30 days after the date of enactment of this Act.*

24 *(c) Appointment of Independent Review Com-*25
*mittee.—The organization selected by the National Insti-*
Appendix A

58
† S 756 EAS
1 *tute of Justice shall appoint not fewer than 6 members to*
2 *the Independent Review Committee.*
3 *(d) Composition of the Independent Review*
4 *Committee.—The members of the Independent Review*
5 *Committee shall all have expertise in risk and needs assessment*
*systems and shall include—*
7 *(1) 2 individuals who have published peer-reviewed scholarship*
*about risk and needs assessments*
9 *in both corrections and community settings;*
10 *(2) 2 corrections practitioners who have developed and*
*implemented a risk assessment tool in a corrections system or in a*
*community supervision setting, including 1 with prior experience*
*working within the Bureau of Prisons; and*
15 *(3) 1 individual with expertise in assessing risk*
16 *assessment implementation.*
17 *(e) Duties of the Independent Review Com-*18
*mittee.—The Independent Review Committee shall assist*
19 *the Attorney General in carrying out the Attorney General's*
20 *duties under sections 3631(b), 3632 and 3633 of title 18,*
21 *United States Code, as added by section 101(a) of this Act,*
22 *including by assisting in—*
23 *(1) conducting a review of the existing prisoner*
24 *risk and needs assessment systems in operation on the*
25 *date of enactment of this Act;*
Appendix A

59
† S 756 EAS
1 *(2) developing recommendations regarding evidence-based*
*recidivism reduction programs and productive activities;*
4 *(3) conducting research and data analysis on—*

5 *(A) evidence-based recidivism reduction programs relating to the use of prisoner risk and*

7 *needs assessment tools;*

8 *(B) the most effective and efficient uses of*

9 *such programs; and*

10 *(C) which evidence-based recidivism reduction programs are the most effective at reducing*

12 *recidivism, and the type, amount, and intensity*

13 *of programming that most effectively reduces the*

14 *risk of recidivism; and*

15 *(4) reviewing and validating the risk and needs*

16 *assessment system.*

17 *(f) BUREAU OF PRISONS COOPERATION.—The Director*

18 *of the Bureau of Prisons shall assist the Independent Review Committee in performing the Committee's duties and*

20 *promptly respond to requests from the Committee for access*

21 *to Bureau of Prisons facilities, personnel, and information.*

22 *(g) REPORT.—Not later than 2 years after the date*

23 *of enactment of this Act, the Independent Review Committee*

24 *shall submit to the Committee on the Judiciary and the*

25 *Subcommittee on Commerce, Justice, Science, and Related*

Appendix A

60

† S 756 EAS

1 *Agencies of the Committee on Appropriations of the Senate*

2 *and the Committee on the Judiciary and the Subcommittee*

3 *on Commerce, Justice, Science, and Related Agencies of the*

4 *Committee on Appropriations of the House of Representatives a report that includes—*

6 *(1) a list of all offenses of conviction for which*

7 *prisoners were ineligible to receive time credits under*

8 *section 3632(d)(4)(D) of title 18, United States Code,*

9 *as added by section 101(a) of this Act, and for each*

10 *offense the number of prisoners excluded, including*

11 *demographic percentages by age, race, and sex;*

12 *(2) the criminal history categories of prisoners*
13 *ineligible to receive time credits under section*
14 *3632(d)(4)(D) of title 18, United States Code, as*
15 *added by section 101(a) of this Act, and for each category the number of prisoners excluded, including demographic percentages by age, race, and sex;*
18 *(3) the number of prisoners ineligible to apply*
19 *time credits under section 3632(d)(4)(D) of title 18,*
20 *United States Code, as added by section 101(a) of this*
21 *Act, who do not participate in recidivism reduction*
22 *programming or productive activities, including the*
23 *demographic percentages by age, race, and sex;*
24 *(4) any recommendations for modifications to*
25 *section 3632(d)(4)(D) of title 18, United States Code,*
Appendix A

61
† S 756 EAS
1 *as added by section 101(a) of this Act, and any other*
2 *recommendations regarding recidivism reduction.*
3 *(h) TERMINATION.—The Independent Review Committee shall terminate on the date that is 2 years after the*
5 *date on which the risk and needs assessment system authorized by sections 3632 and 3633 of title 18, United States*
7 *Code, as added by section 101(a) of this Act, is released.*

## 8 *TITLE II—BUREAU OF PRISONS*
## 9 *SECURE FIREARMS STORAGE*

10 *SEC. 201. SHORT TITLE.*
11 *This title may be cited as the ' 'Lieutenant Osvaldo*
12 *Albarati Correctional Officer Self-Protection Act of 2018' ' .*
13 *SEC. 202. SECURE FIREARMS STORAGE.*
14 *(a) IN GENERAL.—Chapter 303 of title 18, United*
15 *States Code, is amended by adding at the end the following:*
16 *"§ 4050. Secure firearms storage*
17 ' '(a) DEFINITIONS.—In this section—*
18 ' '(1) the term 'employee' means a qualified law*

46

19 *enforcement officer employed by the Bureau of Prisons; and*
21 *' '(2) the terms 'firearm' and 'qualified law enforcement officer' have the meanings given those terms*
23 *under section 926B.*
Appendix A



LEGAL MAIL

LEGAL MAIL

LEGAL MAIL